IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**JESSE W.**[1]

        Plaintiff,

   v.

**COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,**

        Defendant.

Civ. No. 6:21-cv-01337-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Jesse W. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income benefits. Full consent to magistrate jurisdiction was entered on October 28, 2021 (Dkt. #6). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

## BACKGROUND

    Plaintiff is a 49-year-old man who alleges he is unable to work due to the effects of anxiety and multiple musculoskeletal injuries including his left rib, right hip, and low back. Tr. 233. On January 11, 2019, Plaintiff protectively filed an application for supplemental security income alleging disability beginning April 21, 2018, around the time of a motor vehicle accident.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

Tr. 66, 188-93. The claim was initially denied on November 13, 2018, and upon reconsideration on April 23, 2019. Tr. 110-13, 119-25. Plaintiff requested a hearing before an ALJ on March 11, 2020. Tr. 123. Plaintiff appeared by phone and testified at a hearing held on August 6, 2020. Tr. 52. He was represented at the hearing by an attorney. *Id.* At that hearing, he ALJ Katherine Weatherly ordered a complicated psychological exam. Tr. 77. Plaintiff's attorney also requested a brief supplemental hearing which was held on April 16, 2021. Tr. 38. The ALJ found Plaintiff not disabled on April 28, 2021. Tr. 30. The Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.  The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the

Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55;

*Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since September 11, 2019, the application date. Tr. 22.

2. Plaintiff has the following severe impairments: degenerative disc disease out of the lumbar spine; right hip AC tear; unspecified neurodevelopmental disorder; rule-out autism; generalized anxiety disorder; dysthymia; and general personality disorder with avoidant and schizoid traits. *Id.*

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 23.

4. Plaintiff has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b) except he can frequently climb, balance, kneel or crawl. He can occasionally stoop or crouch. He can understand, remember, carry out, and persist at simple, repetitive, routine tasks involving simple work-related decision-making. He can tolerate few, if any changes in the workplace. He must avoid assembly line pace work. He can tolerate no more than occasional interaction with supervisors, co-workers, and the public. Tr. 25.

5. The Plaintiff is unable to perform any past relevant work. Tr. 28.

6. Plaintiff was born on February 16, 1974, and was 45 years old, which is defined as a younger individual age 18-49, on the date his application was filed. *Id.*

7. Plaintiff has at least a high school education. *Id.*

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled,' whether or not the Plaintiff has transferrable job skills. Tr. 28-29.

9. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner, housekeeping, collator operator, and marker II. Tr. 29.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since January 11, 2019, the date the application was filed. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation,

the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53

F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec.*

*Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a

reviewing court "cannot affirm the [Commissioner's] decision on a ground that the

[Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the

Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden

of showing that an error is harmful normally falls upon the party attacking the agency's

determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set

aside if the proper legal standards were not applied in weighing the evidence and making the

decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42

U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or

without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.
2. Whether the ALJ properly evaluated the medical opinions and evidence from Adam
   Drapkin, DC, and Scott Alvord, PsyD.
3. Whether the ALJ properly evaluated the lay witness statement from Derek Harris.

For the following reasons, the Court finds that the ALJ erred in evaluating Plaintiff's subjective

mental and physical symptom testimony and the medical opinions regarding such impairments.

The decision of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

### I.     The ALJ erred in evaluating Plaintiff's subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Bunnel v. Sullivan v*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

Here, the ALJ noted that Plaintiff alleged disability primarily based on physical limitations, including multiple severe musculoskeletal injuries to his left rib, right hip, and low back. Tr. 26. These injuries prevent Plaintiff from sitting or standing longer than 15 minutes and walking more than one-half block at a time. ECF No. 18 at 7, Tr. 95. Plaintiff also alleged mental limitations, including anxiety, dysthymia, a neurodevelopmental disorder, and the avoidant and schizophrenic traits that accompany his general personality disorder. Tr. 906. The ALJ erred in discounting Plaintiff's subjective mental and physical symptom testimony.

**a. Plaintiff's physical subjective symptoms were improperly discounted, resulting in reversible error.**

First, the ALJ found that the objective medical "evidence reasonably justifies certain physical limitations, but it is not indicative of a debilitating pain condition." Tr. 26. The objective medical evidence is a relevant factor in evaluating a claimant's symptoms, though it cannot be the sole ground on which testimony is discounted. 20 C.F.R. § 416.929(c)(2). Here, the ALJ did not properly consider the objective testing and evaluation of the entire record, which consistently showed Plaintiff's tolerance for standing being 15 minutes, with relief only received from laying down for 1-2 hours. Tr. 370, 582-85, 890, 895.

The ALJ noted that his reports of severe back and hip pain are unsupported. This assertion is objectively false, unconvincing and is not supported by substantial evidence in the record. Imaging of the hip and lumbar spine showed significant abnormalities. Tr. 575, 576, 829, 830, 835, 838, 839, 856. The chart notes from A Healing Space during 2018-2019 show a cyclical pattern of improvement and worsening of pain in Plaintiff's plagued areas. Tr. 366-574; 593-789. Though the ALJ recognized Plaintiff's abnormal lumbar spine imaging results, she counters by stating that "claimant was able to walk normally without an assistive device [and]. . . demonstrated normal motor strength and neurologic functional in all extremities . . ." Tr. 26. The

ALJ also recognized Plaintiff's radiological evidence revealing his torn anterior-superior acetabular labrum and his subsequent interest in seeing a neurologist to treat the inflammation. However, the ALJ countered by stating "the claimant exhibited no resulting weakness or gait disturbance . . . his treatment provider observed that his clinical examination was "fairly benign, and recommended conservative treatment." Tr. 27. This counter assertion is not specific to Plaintiff's claims of deep and sharp pain during hip flexion, Tr. 374, which is pertinent to sitting. Pointing to a singular test in the record fails to recognize the complexity of the entire medical record and does not show that her legal findings were supported by substantial evidence in the record. An ALJ may not single out (cherry-pick) isolated examples of temporary well-being or relief from disabling symptoms to reject testimony as inconsistent with the medical record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1017-18. However, even if some of the reasons provided by the ALJ do not meet the clear and convincing standard to reject subjective symptom testimony, the ALJ's conclusion must be upheld so long as the ALJ provided at least one clear and convincing reason, supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d at 682 *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)). Here, the ALJ in this case has not provided one clear and convincing reason to reject Plaintiff's physical subjective symptom testimony surrounding his hip and low back pain.

### b. Plaintiff's mental subjective symptoms were improperly discounted, resulting in reversible error.

The ALJ found that the objective evidence did not support Plaintiff's subjective symptoms. This is objectively false and the ALJ's claims are not supported by substantial evidence in the record. Plaintiff has reported that he ruminates and feels uncomfortable in public

settings, as well as feeling that he cannot reciprocate social and emotional cues. Tr. 895. Plaintiff

also admits he cannot read social cues and does not know how to act in certain situations. *Id.*

Plaintiff experiences anxiety, anxiety attacks, depression and avoidant behavior. *Id.* Plaintiff's

primary mental health treatment provider acknowledged Plaintiff's mental limitations, which

were observed with objective testing. Dr. Alvord's objective tests, the Wechsler Adult

Intelligence Scale 4th Edition test and the Adaptive Behavior Assessment System 3rd Edition,

done on April 9, 2021 show that though Plaintiff's verbal comprehension skills are above

average, his working memory is low average. Tr. 906. Plaintiff's general adaptive composite,

conceptual and practical classifications are all below average, with his social classification being

average. Tr. 905. Dr. Alvord concluded that Plaintiff would not function 1/3-2/3 of the time for

several work-related tasks. *See* Tr. 907. He also concluded that Plaintiff would have severe

difficulty performing detailed and complex tasks. *Id.* These findings support Plaintiff's

subjective testimony surrounding his social issues, anxiety and lack of focus.

     To counter the above findings, the ALJ relies on the Strong Integrated Behavioral Health

Intake Assessment. The Strong Integrated Behavioral Health Intake Assessment concluded with

a diagnosis of an unspecified mental disorder, absent any objective testing, with the treatment

provider stating "[g]iven his age and the severity of his issues, it is likely that [Plaintiff] has not

received targeted and appropriate care to address underlying uses. Testing is recommended to

provider a more specific diagnostic understanding and recommendations for medical and

behavioral health interventions that may be most beneficial to help him." Tr. 873-74. The ALJ

used this report to state that Plaintiff was presenting as "appropriately dressed, cooperative, goal

directed, organized, logical. And fully oriented." Tr. 28, *see* 871. However, as discussed above,

an ALJ may not single out temporary instances of temporary well-being to support a conclusion

of inconsistency. *Garrison*, 759 F.3d at 1017-18. On the contrary, Dr. Alvord is the only mental

health treatment provider who conducted objective testing related to Plaintiff's mental subjective

symptom testimony. The most important factor in evaluating symptom severity is whether the

alleged symptoms are substantiated by the objective medical evidence, that is, the signs and

clinical/laboratory findings.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL

5180304, at *5. Signs and clinical/laboratory findings[2] are within this case's record and proper

weight should be given to them. Tr. 896-97, 903-907. It follows that relying on the Strong

Integrated Behavioral Health Intake Assessment to point to Plaintiff's "fully-oriented and

cooperative" affect was erroneous when compared to the signs and clinical/laboratory findings

available in the medical record. Tr. 27.

Lastly, the ALJ committed reversible error by suggesting Plaintiff refuses to follow

treatment and better his symptoms. The ALJ references Dr. Alvord's 2020 report highlighting

Plaintiff's efforts in trying various psychiatric medications in the past, with cessation due to

negative side effects. Tr. 28. The ALJ then points out that in Dr. Alvord's first report he states

that there are probably numerous other medications and/or strategies that could be utilized "if the

claimant was willing to try them." *Id.* On the contrary, Plaintiff has tried three medications in the

past to treat his anxiety and depression. Tr. 895, 904. However, the ALJ failed to recognize that

---

[2] Signs are one or more anatomical, physiological, or psychological abnormalities that are observable, apart from the claimant's statements (description of symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. Psychiatric signs must be shown by observable facts that can be medically described and evaluated. 20 C.F.R. § 404.1502.

Laboratory findings are one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests. *Id.*

the "negative side effects" Plaintiff was experiencing during this treatment was suicidal ideation Tr. 895, 904. In turn, Plaintiff has tried a more holistic treatment regimen to combat his depression and anxiety, including meditation, mindfulness and yoga. Tr. 70, 871, 895, 897, 904. Failure to take prescribed medications is not a valid reason to discredit testimony when those medications caused "addiction potential or intolerable side effects." *Carmickle*, 533 F.3d at 1162. There is evidence in the record supporting Plaintiff's hesitation to start new medication due to intolerable side effects. Tr. 895, 904. Moreover, Dr. Alvord states in his second report that "I suspect he is not an individual who will present to treatment given a desire towards avoidance and some suspiciousness . . . This is considered a complex case given diagnostic uncertainty. He should be monitored very closely for increasing suicidal ideation." Tr. 906. There are signs and findings in the record showing Plaintiff has a personality disorder with schizoid and avoidant personality traits which corroborate his lack of desire to try new medications and/or methods to heal, Tr. 897, 903-907, none of which the ALJ mentions. Therefore, the ALJ committed reversible error by finding Plaintiff's subjective mental symptom testimony was inconsistent with the record.

## II.    The ALJ did not properly evaluate the medical opinions of Adam Drapkin, DC, and Scott Alvord, PsyD.

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on January 11, 2019.  Thus, the Commissioner's new regulations apply to the ALJ's assessment

of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed.

Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§

404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or

after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§

404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers

several factors. The two most important factors are supportability & consistency. *Id.* Secondary

factors include the relationship with the claimant, specialization, and other factors. *Id.* at

404.1520c(c), 416.920c(c).

### a. The ALJ improperly rejected the opinion of Dr. Drapkin.

Adam Drapkin, D.C., examined Plaintiff from June 2018 to March 2019, soon after

Plaintiff's motor vehicle accident. Tr. 788-89. From 2018-2019, Dr. Drapkin's treatment and

progress notes objectively show a cyclical pattern of temporary improvement and the subsequent

worsening of pain which affected his daily routine. For example, on July 6, 2018, Plaintiff

reported back and knee pain, that walking up to 3 blocks makes hip and back pain worse, he slept

through the night and could sit for up to an hour. Tr. 747. He received improvement in symptoms

after "getting worked on for about a day." *Id.* In September, Plaintiff reported that he could sit at

a computer for about a half-hour before the pain begins, and that driving pain starts earlier. Tr.

679. Plaintiff had continued pain in the hip but was overall improved. *Id.* However, in late

October 2018, Plaintiff reported to Dr. Drapkin that he couldn't sleep the night prior, and he had

the worst day regarding pain since the accident. Tr. 664. Dr. Drapkin noted that "[t]here has been

an exacerbation to [Plaintiff]'s condition. These are episodic marked deterioration of the patient's condition due to acute flareups of the presenting conditions." Tr. 662. Though this drastic increase in pain was likely spurred from a then-recent trip to Texas (2 weeks prior to visit date), Tr. 667, it was not until a month later that he started to show improvement. Tr. 658, 661. November through December of 2018 shows symptom improvement with smaller pain flareups. Tr. 630-57.

The more severe deterioration began in January of 2019, where Plaintiff was complaining that most of his pain had flared back up again. 611-28. This contradicts what the ALJ cites to in her opinion. Tr. 27. Firstly, The ALJ points to a single chart note stating that "[p]atient's condition is improving." Tr. 597. What the ALJ fails to recognize is that a couple of weeks later Dr. Drapkin stated in his assessment that "[a]t this time, [Plaintiff] continues to struggle with pain, discomfort, and limitations while at work and while performing activities of daily living due to injuries." Tr. 593. On the whole, the ALJ failed to recognize the longitudinal treatment record and singled-out instances of temporary relief as evidence to support a finding of inconsistency. An ALJ "must consider record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by identifying a specific quantum of supporting evidence." *Lingenfelter*, 504 F.3d at 1035. This reasoning is without merit and constitutes reversible error.

Secondly, he ALJ goes on to mention the findings of Barbara Hoefener, FNP, to counter Dr. Drapkin's observations. She points to Plaintiff's ability on December 17th, 2019 to exhibit a full range of motion without acute distress and to walk on his toes and heels to counter Dr. Drapkin's opinion that the claimant cannot sustain work at any exertional level. Tr. 27, 793. Firstly, this treatment provider's examination was done at one point for a limited amount of time

in the longitudinal record, whereas Dr. Drapkin's examinations were done frequently in the span of almost one year's time. The frequency of examination by a medical source may demonstrate the source has longitudinal understanding of the claimant's impairments. 20 C.F.R. §§ 404.1520c(c)(3)(ii), 416.920c(c)(3)(ii). Though this is a less important factor for an ALJ to consider when articulating medical opinion evidence, Barbara Hoefener's findings are not consistent with entirety of the record when viewed as a whole. As mentioned above, the two most important factors an ALJ must consider when articulating medical opinion evidence are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). For supportability, more weight is accorded medical opinions that are better supported by objective medical evidence. Similarly, more weight is accorded medical opinions that are better explained. For non-examining medical sources, the quality of the explanation provided for the opinion depends on the supportability and quality of explanation. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). For consistency, more weight is accorded medical opinions that are most consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Here, Barbara Hoefener's observations are inconsistent and unsupported by the entire record, which has several objective tests and observations listed by more than one provider. These can objectively explain Plaintiff's symptoms of having sharp pain in his low back and right hip. Tr. 721, 569, 570, 571, 575-76, 793, 797, 830, 834, 835, 838-39, 856. These signs and findings do support Dr. Drapkin's first and second functional assessment, so the Court is unpersuaded by the ALJ's claim that Dr. Drapkin's assessments are not supported by any substantive medical evidence.

Thirdly, the ALJ discusses Hoefener's declination to provide a functional assessment, asserting there was no "medical reason for disability," Tr. 27, and argues that this is "contrary to contemporaneous medical evidence." *Id*. However, the ALJ fails to acknowledge the full

statement of Hoefener, which is that she does not do disability paperwork and that "he will need to see someone else for that pursuit." Tr. 882. It follows that Hoefener's rejection was not due to lack of reason for disability, but that she cannot provide such paperwork. *Id.* Despite such reasoning, Hoefener decides to declare on the treating source statement page 1 "medical reason for disability = no." Tr. 883. This shows that Hoefener lacked consistency with her own statements and placed herself in the shoes of the factfinder. The ALJ failed to give this occurrence proper weight in comparison to the rest of the record. The ALJ also failed to consider the context in which she stated, "the claimant reportedly told nurse practitioner Hoefener that he was exercising three times a day and taking turmeric daily—and that he found his sitting capacity had significantly improved." Tr. 27. Even with those exercises to strengthen his lower back muscles, Plaintiff stated he could only tolerate sitting for up to 2 hours, as opposed to only 15 minutes. Tr. 878. While this is an improvement, the next sentence states that standing for about 15 minutes "causes severe pain to the point where he cannot even focus on the conversation he was having." *Id.* Therefore, Plaintiff's isolated improvement is still not enough to discount Dr. Drapkin's medical opinions, nor is it enough to support the RFC finding. This constitutes reversible error on the part of the ALJ.

**b. The ALJ improperly rejected the assessments of Dr. Alvord.**

Scott T. Alvord, PsyD, evaluated Plaintiff in October 2020 and April 2021 for the Oregon Disability Determination Services. Tr. 894-900, 903-07. Dr. Alvord reviewed the previously mentioned Strong Integrated Behavioral Health Intake Assessment prior to evaluating Plaintiff. Dr. Alvord noted in his first in-person evaluation that Plaintiff:

> [G]raduated from high school and completed a master's degree in English. He described struggling in public school. He has a history of "social problems and academic problems". He did describe achieving educational success but admitted some accommodations. Specifics of special education are not clear, but he is endorsing being

diagnosed with a "high functioning Autism Spectrum Disorder" and underlying anxiety and difficulty with social interactions that impacted his education. Tr. 895

Dr. Alvord's first diagnoses were an unspecified neurodevelopmental disorder, rule-out autism, anxiety disorder, dysthymia, schizoid and avoidant personality traits. Tr. 897. Dr. Alvord's second evaluation was done at the behest of Plaintiff to clarify diagnosis, inform treatment and quantify functioning. Tr. 903. Dr. Alvord performed a mental status examination and administered a Wechsler Adult Intelligence Scale 4th Edition (WAIS IV; selected verbal subtests) and an Adaptive Behavior Assessment System 3rd Edition (ABAS III) exam. The results from these exams have been mentioned in this opinion already, therefore this Court will not discuss them here. Dr. Alvord noted in his second remote evaluation that:

> [A]lthough I do believe he meets the criteria for a Neurodevelopmenlal Disorder (idiopathic). Intellectually he appears to be functioning within normal limits given a verbal IQ screen although subtest scatter is significant. Adaptive abilities are somewhat less than someone might expect given his education level, assessed IQ, etc. Again, I see evidence of a Neurodevelopmental Disorder that is likely contributory, I continue to see evidence of an Anxiety Disorder not otherwise specified as well as Dysthymia. I will update my previous diagnoses that involved Schizoid and Avoidant Personality Traits to a General Personality Disorder with schizoid and avoidant personality traits. Tr. 906.

The ALJ rejected Dr. Alvord's April 2021 evaluation and found it "not persuasive" for two reasons: (1) "Dr. Alvord did not review any of the claimant's medical records," and (2) "met via telemedicine." Tr. 28. Both reasons are unsupported.

First, while Dr. Alvord did not review any of the claimant's medical records prior to the objective testing in the second evaluation, the only medical record he did review in the first evaluation was a four-page intake assessment that reiterates the majority of Plaintiff's subjective complaints. Tr. 871-74. This contradicts the ALJ's assertion that Dr. Alvord's initial opinion was inherently more persuasive because he was informed by a "longitudinal review of the claimant's medical records." Tr. 28. This is simply untrue, and this Court is unpersuaded. The intake

assessment was completed on December 18, 2019 and diagnoses Plaintiff with an unspecified

mental disorder and recommended further testing. Tr. 873-74. This intake assessment does not

represent a longitudinal review of Plaintiff's medical records. Even if the second evaluation were

to be given less weight, both evaluations are similar in nature, aside from Dr. Alvord's alteration

from his initial diagnosis from "Schizoid and Avoidant Personality Traits," Tr. 897, to "General

Personality Disorder (Avoidant and Schizoid Traits). Tr. 906. The addition of objective testing to

pinpoint Plaintiff's mental health struggles triggers the supportability prong in the ALJ's medical

opinion articulation test, where a medical opinion is better supported by objective medical

evidence. 20 C.F.R. §§ 404.1527(c)(5). Here, the objective medical evidence in the second

evaluation supports Plaintiff's complaints regarding his anxiety, depression and interaction with

others.

   Second, while Dr. Alvord conducted the objective testing remotely for the second

evaluation, this is not an adequate reason to discount a mental health evaluation by a provider.

Contrary to the ALJ's argument that Dr. Alvord's examination by telemedicine was cursory and

less reliable, the medical records reflect that Dr. Alvord considered the global safety

circumstances surround the COVID-19 pandemic that were widespread at the time of the second

evaluation. Tr. 903. Further, "[t]he practice of 'telemedicine'—i.e., 'health care delivery,

diagnosis, consultation, treatment, transfer of medical data, and education using interactive

audio, video, or data communications'—is specifically authorized by the Telemedicine

Development Act of 1996 (Bus. & Prof. Code, § 2290.5, subd. (a)(1).)" *Hageseth v. Superior*

*Court*, 150 Cal.App.4th 1399, 1424, 59 Cal. Rptr. 3d 385 (Cal. App. 2007). Therefore, the ALJ's

logic in finding Dr. Alvord's second evaluation unpersuasive is flawed and constitutes reversible

error.

### III.    The ALJ did not properly evaluate the lay witness statement from Derek H.

Plaintiff assigns error to the ALJ's evaluation of the lay witness statement. ECF No. 18 at

20-21. Lay witness testimony regarding the severity of a [plaintiff]'s symptoms or how an

impairment affects a claimant's ability to work is competent evidence that an ALJ must take into

account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an

ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r of Soc. Sec.*

*Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114

*superseded on other grounds by* 20 C.F.R. § 404.1502(a)). Further, the reasons provided must

also be "specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). However, where the

ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony,

and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's

failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d

at 1121-22 *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

The record contains a lay witness statement submitted by Plaintiff's roommate and

longtime friend of 30 years, Derek H. Tr. 255-62. Derek reported that as Plaintiff's roommate, he

has observed Plaintiff having difficulty doing "most or all movements[:] lifting, exercise, or even

sitting for very long (such as driving)." Tr. 256. Derek also reported that "[Plaintiff] has a hard

time being upright for more than a half hour, so he doesn't go out, I've tried." Tr. 259. The ALJ

stated that such lay witness evidence is not indicative of a debilitating mental condition because

it conflicts with the record for various reasons. Tr. 28.

The ALJ erred in rejecting the lay witness statement because she again isolated another

instance where Plaintiff presented as "fairly benign." Tr. 28, 829. She also stated "Mr. [H.]

acknowledged that the claimant could follow instructions and get along with others." *Id.* Here,

the ALJ lacks specificity and fails to explain how Derek H.'s day-to-day observances of Plaintiff are not indicative of a debilitating condition. Overall, she asserted that both indications by the lay witness pointed to inconsistency with the record and not indicative of a debilitating condition. *Id.* Inconsistency with the medical record is a germane reason to exclude a lay witness statement from consideration. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). However, because Derek H.'s statement is consistent with the record for the reasons described supra in section I, the ALJ did not have a valid reason for excluding the statement. Accordingly, the ALJ's assertion that Derek H.'s statements were not inconsistent with the record was harmful error.

## IV.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled' under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors discussed above. The ALJ failed to supply legally sufficient reasons for Plaintiff's subjective symptom testimony.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). The Court finds that the record here, which spans over 900 pages, has been fully developed no material conflicts and ambiguities exist.

As to the third requisite, in crediting the discredited evidence as true, the ALJ would be required to find Plaintiff disabled on remand. Plaintiff testified he can only sit, in various positions in a chair, for a maximum of two hours due to his pain with relief from laying down for at least one hour. Tr. 47, 66. At the 2021 hearing, the VE testified that an individual who is routinely off-task one-third of their workday and needed instruction from a supervisor to stay on task would not be able to maintain work. Tr. 45-46. As such, on remand, the ALJ would be compelled to find Plaintiff disabled. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (remanding for an immediate payment of benefits after crediting improperly rejected evidence as true, combined with VE testimony, established disability).

Lastly, considering the record as a whole, the Court has no basis to doubt that Plaintiff is disabled under the Act. *Garrison*, 759 F.3d at 1020-21 (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled"). As such, the Court concludes the proper remedy in this case is to remand for a calculation of benefits. *See Garrison*, 759 F.3d at 1022-23.

## ORDER

The ALJ improperly evaluated the subjective symptom evidence, medical opinion evidence, and lay witness testimony resulting in reversible error. For the reasons set forth above, the decision of the Commissioner is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

It is so ORDERED and DATED this 29th day of June, 2023.

MARK D. CLARKE
United States Magistrate Judge